JOHN MURRAY *vs.* BOSTON ICE COMPANY.

Suffolk. November 11, 1901. — December 6, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Negligence*, Contributory, of another, Proximate cause.

One sent in an express wagon with another man as driver to deliver coal, who returning on the seat with the driver is thrown out and injured by a collision with an ice cart negligently driven, may recover from the owner of the ice cart, although the negligence of the driver of the wagon in which the plaintiff was sitting may have contributed to the accident.

TORT for injuries sustained by the plaintiff in being thrown from a wagon driven by another when struck by an ice cart alleged to have been negligently driven by a servant of the defendant. Writ dated May 20, 1898.

At the trial in the Superior Court, before *Richardson*, J., the jury returned a verdict for the plaintiff in the sum of $3,000; and the defendant alleged exceptions.

*C. C. Mellen*, for the defendant.

*W. B. Sprout*, (*J. J. Scott* with him,) for the plaintiff.

HOLMES, C. J.   This is an action for personal injuries caused by being thrown from an express wagon in consequence of a collision with an ice wagon belonging to the defendant.   The plaintiff worked by the hour for the Salvation Army, and had been sent with one Marshallen to deliver a ton of coal, Marshallen having charge of the driving and the plaintiff having no other duty than to help in delivering the coal.   The coal had been delivered and the wagon was returning, when the accident happened.   The plaintiff, it would seem, then was sitting by Marshallen's side.   At the trial the evidence was conflicting as to how the collision occurred and who was to blame.   The defendant asked instructions to the effect that if the accident was not due to the negligence of the defendant's driver alone but was due partly also to the negligence of the plaintiff's driver, Marshallen, he could not recover.   This the judge refused to rule, but did rule that if the plaintiff " trusted to Marshallen the sole care and management of the team in which they were riding, and relied solely on the care and vigilance of Marshallen," then he must show due care on Marshallen's part.   The defendant excepted.

It will be seen that the judge did not go with the plaintiff to the point of declaring that Marshallen's negligence was immaterial in any event.   On the other hand he declined to follow *Thorogood* v. *Bryan*, 8 C. B. 115, so far as to assert the absolute identification of the plaintiff with the driver for the purposes of recovery in this case.   On the latter point the judge was justified by *Randolph* v. *O'Riordon*, 155 Mass. 331, and the cases which it cites at p. 337.   But it is suggested that the case at bar is like *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77, 79, which is recognized, or at least is not overruled in terms, by *Randolph* v. *O'Riordon*, and therefore that the instruction requested should have been given.   The answer is that it was given, subject to the jury's finding that facts like those in the Allyn case were true.

On the authorities the instruction was at least sufficiently favorable for the defendant. For, although the counsel for the defendant tried to put into the plaintiff's mouth that Marshallen was driving by his permission, it is quite plain that the driving was intrusted to Marshallen by his employers and that the plaintiff was on the wagon for a different purpose, which we have stated. It does not appear that there was any distinction between his legal position when returning and his position when going with the load. It may be inferred that he was expected to return and still was employed and under orders although paid by the hour. If so, he had not the independence of a man driving with a friend who holds the reins, as in the Allyn case, and moreover the nature of the accident was different. We do not mean to give that case any further sanction than it now has, but Allyn's injury was due to a failure to take sufficient precautions in crossing a railroad, the plaintiff's, on the defendant's theory, to Marshallen's not turning out as he should have done. In the former case Allyn had a chance to insist on stopping or getting out, in the latter the whole trouble began and was finished in a moment. Except upon a strained interpretation of the plaintiff's testimony, which probably was pressed at the trial as it was pressed before us, the instruction would seem to sanction an identification of passenger and driver when sitting together, although repudiating it as a general rule. It may be that in this State the doctrine of identification is not confined strictly to the law of master and servant. It would be hard to say that it had played no part in the origin at least of the rules established as to parent and child in actions brought by infants for injuries on the highway. *Holly* v. *Boston Gas Light Co.* 8 Gray, 123, 132. Those rules seem to us reasonable and right, but the principle does not extend to passengers on vehicles. Cases which suggest it are to be explained in other ways.

If there were no decisions upon the matter, the ruling requested for the defendant would have to be considered from a different point of view which might present more trouble. For it might be argued that if the accident would not have happened but for the negligence of a person for whose conduct the defendant was not responsible, the defendant could not be regarded as the proximate cause of the injury, to use the phrase

which commonly is used. In *Mills* v. *Armstrong*, *The Bernina*, 13 App. Cas. 1, 11, Lord Bramwell, while justifying *Thorogood* v. *Bryan* on this ground upon a point of pleading, shows that he is quite aware of the difficulty, although not regarding it as insuperable, as a matter of substantive law. The question would be, to state it in a different way, why the defendant should be held bound to anticipate wrongful conduct on the part of another when the wrong was negligent any more than when it was wilful. If not bound to anticipate it, then the defendant's conduct did not threaten the harm which ensued. See *Glynn* v. *Central Railroad*, 175 Mass. 510, 511. But it is settled, and it seems to be in accord with the general sense of the profession, that a defendant may be liable notwithstanding the concurrence of negligence on the part of a third person in producing the result, and in some cases perhaps even when the third person's negligence is later in point of time. *Randolph* v. *O'Riordon*, 155 Mass. 331. *Elmer* v. *Locke*, 135 Mass. 575, 576. *Little* v. *Hackett*, 116 U. S. 366. *Mills* v. *Armstrong*, 13 App. Cas. 1. Perhaps the line will be drawn to include such intervening acts as are recognised to be more obviously inevitable than the wilful torts of adults although still transgressions of the law. Even more extensive liability has been maintained. Pollock, Torts, (6th ed.) 455. Ewart, Estoppel, 39 *et seq.* The question what was the proximate cause, Pollock, Torts, (6th ed.) 452, 454, or, in the language of the charge, who was to blame, is left to the jury, and it has been left to them when there intervened even a wilful trespass in a case where the wrongdoer was an infant. *Lane* v. *Atlantic Works*, 111 Mass. 136, 141. Compare *Daniels* v. *New York & New England Railroad*, 154 Mass. 349.

Some criticism is made upon the charge upon points not open. On the whole we are of opinion that the defendant has no cause to complain.

*Exceptions overruled.*