SHAUNA DELUCA & others[1] *vs.* VIRGINIA E. CLEARY.

No. 97-P-1978.

Berkshire. January 7, 1999. - June 2, 1999.

Present: KASS, KAPLAN, & LENK, JJ.

*Negligence,* Parent, Motor vehicle, Foreseeability of harm. *Motor Vehicle,* Entrustment.

At the trial of a civil action, the judge did not err in directing a verdict on a claim that was not established by the evidence. [52]

This court declined to extend the holding of *Poskus* v. *Lombardo's of Randolph, Inc.,* 423 Mass. 637 (1996), to impose tort liability on a parent who left a motor vehicle accessible to her minor child, without knowledge or any reason to know that the child would use the vehicle without permission. [52-54]

CIVIL ACTION commenced in the Superior Court Department on January 11, 1995.

A motion to amend was heard by *Constance M. Sweeney,* J., and the case was tried before *Francis X. Spina,* J.

*Robert A. Monteleone, Jr.,* for the plaintiffs.

*Paul M. Vrabel* for the defendant.

LENK, J. The defendant Virginia Cleary and her husband William Greenspon are the parents of Amy Greenspon who, on August 6, 1994, was sixteen years old. The family lived in a rural area near Lenox, Massachusetts, and Amy was home from school for the summer. Amy was scheduled to complete her summer jobs by August 5, then travel via bus and ferry on August 7 to visit with a friend in Nantucket until August 13. Her parents allowed Amy to stay by herself for two days at the family home while she finished work and they left on August 3 for a ten-day vacation in Maine. Food was provided for Amy and arrangements were made for her transportation needs in her parents' absence. Her parents drove one car to Maine and left

---

[1]Carol and Ricardo DeLuca, Shauna's parents, as next friends.

the mother's car in the driveway, unlocked and with the spare key under a floormat. Amy had a learner's permit, liked to drive and, on occasion, had previously driven her mother's car, but only in the company of a parent, and knew where the car's spare key was kept.

Amy did not have her mother's permission to drive the car while her parents were away. She did so anyway on August 5 and 6, each time without her mother's prior knowledge or consent. On August 6, 1994, Amy was in an accident in which she and her passenger, the plaintiff Shauna DeLuca, were injured.

DeLuca brought suit in three counts, alleging in count I negligence against Amy, in count II that Cleary "through herself, her agent, employee, or by a person [for] whom she was legally responsible negligently and carelessly operated her motor vehicle [so] as to cause it to collide with another motor vehicle," and in count III that Cleary "negligently entrusted the motor vehicle to her minor daughter, whom she knew or should have known to be incompetent or unfit to use it safely." After some discovery, DeLuca moved to amend her complaint to add count IV against Cleary, alleging that "[o]n or about August 6, 1994, the defendant, Virginia Cleary, negligently left her 16 year old daughter home alone, with access to her 1986 Toyota Tercel, in light of her daughter's minor age and incompetence to operate a motor vehicle." The motion to amend was denied without prejudice, the judge noting that she "seriously question[ed] whether the proposed amendment states a cause of action."

So matters stood until trial before a different judge, when De-Luca renewed her motion to amend, relying in part upon *Poskus* v. *Lombardo's of Randolph, Inc.*, 423 Mass. 637 (1996), decided several months before trial. The motion was denied and the case went to trial before a jury on counts II and III.[2] The trial judge directed a verdict on count II (vicarious liability) in favor of Cleary, and count III (negligent entrustment) was thereafter submitted to the jury which, in answer to special verdict questions, found that Cleary had not given Amy general or specific permission to use her car at the time of the accident.

---

[2]A default judgment entered against Amy Greenspon on count I for failure to answer interrogatories, and a judgment upon an assessment of damages in the amount of $58,000 was entered against her. There is no appeal from this, nor does DeLuca appeal from the judgment for Cleary on count III.

On appeal, DeLuca argues that the first judge erred in denying her motion to amend the complaint, that the trial judge erred in denying her renewed motion to amend the complaint, and that the trial judge erred in directing a verdict on count II of her complaint. These asserted errors really boil down to one: whether the plaintiff stated a cognizable claim against Cleary for negligence, not in Cleary's capacity as parent of a wrongdoing child, but as a motor vehicle owner with an ordinary duty of due care and liability for the foreseeable consequences of her actions. The plaintiff contends that, after *Poskus*, such a claim is viable and that she both impliedly asserted it in count II and sought unsuccessfully to assert it in her proposed count IV. Hence, she argues, it was error to direct a verdict on count II and to deny her motion to add count IV.

DeLuca's claim of error as to count II is readily answered. In the joint pretrial memorandum of the parties, the plaintiff conceded that the sole theory of liability on which count II was predicated is G. L. c. 231, § 85A, i.e., vicarious liability. She was bound by this stipulation, from which she did not seek to be relieved at trial and on which the judge could rightly rely. There was insufficient evidence establishing the requisites of such a claim, i.e., an agency relationship between mother and daughter or that Amy had actual or apparent authority from her mother to invite the plaintiff for a ride in her mother's car. The plaintiff conceded as much at the close of her case, but belatedly attempted to fend off the motion for directed verdict by contending that count II was viable because "susceptible to a *Poskus* type argument." In view of the pretrial stipulation and the judge's denial of her renewed motion to add count IV which she argued was *Poskus*-based, there was no error in directing out count II.

We turn then to whether DeLuca's proposed count IV states a viable claim. Cleary contends that count IV in reality unsuccessfully attempts to state a claim of negligent parental supervision. "A parent has a duty to exercise reasonable care to prevent his minor child from intentionally or negligently inflicting harm on others, where the parent knows or should know of the child's propensity for a particular type of harmful conduct and has the opportunity to take reasonable corrective measures." *Alioto* v. *Marnell*, 402 Mass. 36, 38 (1988), citing *Caldwell* v. *Zaher*, 344 Mass. 590, 592 (1962). We agree that such a claim would not succeed here, the plaintiff having acknowledged that, had

the amendment been allowed, the evidence would have been the same. She alleged no facts and introduced no evidence that Amy had ever used the car or the spare key without Cleary's permission or without Cleary's knowledge that she had done so or had a propensity to do so.[3] See *Watson* v. *Salvoni*, 27 Mass. App. Ct. 735 (1989).

The plaintiff, however, denies that count IV states a claim for negligent parental supervision. Rather, she contends that the parent-child relationship is irrelevant to her general negligence claim that Cleary, as a car owner, violated her ordinary duty of due care by making the car accessible to an unfit driver and that it was reasonably foreseeable that this driver would operate the car and likely harm others. She relies on the authority of *Poskus* for this theory of liability.

In *Poskus*, the plaintiff was a police officer injured while pursuing on foot a car thief who resisted arrest after leaving the car he had stolen and driven from the defendant's valet parking service. In *Poskus*, the Supreme Judicial Court reconsidered the reasoning of a line of cases involving motor vehicles left unattended with keys in the ignition which are stolen and then injure third persons. Finding unpersuasive the reasoning which had resulted in such cases being a narrow exception to the general rule that liability may be imposed upon one who negligently fails to guard against the consequences of reasonably foreseeable criminal conduct, the court stated that in certain situations where a person makes the theft of a motor vehicle possible, the question of reasonable foreseeability of harm to third persons by the thief's operation of the vehicle would be for the trier of fact. *Poskus*, 423 Mass. at 640. In *Poskus*, summary judgment for the defendant restaurant was nonetheless affirmed because the reasonably foreseeable risk of harm to others created by the defendant's negligence did not include harm caused when the thief resisted arrest, at least where that harm did not occur during flight from the scene of the theft. *Ibid.*

The circumstances described in *Poskus* are quite unlike those

[3]DeLuca calls attention to evidence that three years prior to the accident Amy had a disciplinary problem at school (leaving without permission) and that she may have used marijuana and/or alcohol in the past. There was no evidence, however, of prior disciplinary problems involving the use of motor vehicles nor was there evidence that alcohol or drugs played any role in the August 6 accident. Accordingly, such evidence would be insufficient to prove the requisite propensity for negligent or reckless behavior harmful to others, particularly in connection with the use of a motor vehicle.

presented here. Still, DeLuca contends that Cleary as a car owner would be liable under *Poskus* for harm to third persons resulting from the unauthorized use of her car by neighbors or strangers, and that it would be unjust were the result different solely because the unauthorized user is her daughter. Even if we accept DeLuca's hypothesis for the sake of argument (one as to which we entertain some doubt), we think that in the situation of putative parental liability for the wrongful acts of a minor child, *Poskus* should not control. As the court noted in *Poskus*, "[t]here must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment." *Ibid.* A minor child residing with her parents will likely always have access to motor vehicles owned by them. Because family members invariably know family and household information, minors will know how to find the car keys as easily as they would the matches or the checkbook. It would be a socially undesirable result to impose tort liability on a motor vehicle owning parent who, as here, merely leaves accessible to her minor child a motor vehicle, without knowledge or reason to know of the child's propensity to use the vehicle without permission. To permit liability to be imposed in these circumstances would constitute a substantial extension of the rule set forth in *Poskus*, a course we decline to adopt. "A contrary holding would go far toward exposing parents to liability for the torts of their children solely because of their parenthood." *De-Pasquale* v. *Dello Russo*, 349 Mass. 655, 659 (1965). There was no error in denying the plaintiff's motion to amend her complaint for amendment would have been futile.

*Judgment affirmed.*